# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| CARMELITA WILLIAMS and BARNEY WILLIAMS | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action: 3:23-cv-1460 |
| | § § | With Jury Demand Endorsed |
| EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, NATIONSTAR MORTGAGE LLC, successor by merger to PACIFIC UNION FINANCIAL, LLC, LENDING CLUB CORPORATION, and AVANT LLC, | § § § § § § § § | |
| Defendants. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Carmelita and Barney Williams ("Plaintiffs"), by and through counsel, for their Complaint against Defendants, Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC, Lending Club Corporation, and Avant LLC, jointly, severally, and in solido, states as follows:

## I.  INTRODUCTION

1.      Two of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC, Lending Club Corporation, and Avant LLC,  are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiffs seek to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiffs, Carmelita and Barney Williams, are natural persons residing in Muscogee County, Georgia, and are "consumers," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated  false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Trans Union LLC, which may also

hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

5.      Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Pacific Union/Nationstar," "Pacific Union," "Nationstar/Pacific Union," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

6.      Upon information and belief, Defendant Lending Club Corporation, which may also hereinafter be referred to as "Lending Club," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a California Corporation, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 595 Market Street #200, San Francisco, California 94105. Lending Club is a "person," as defined

by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      Upon information and belief, Defendant Avant LLC which may also hereinafter be referred to as "Avant," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is an Illinois company, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 222 N. LaSalle St. #1600, Chicago, Illinois 60601. Avant is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

8.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III.  JURISDICTION AND VENUE

9.      Plaintiffs respectfully assert that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiffs also assert actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiffs respectfully request that this Honorable Court exercise supplemental

jurisdiction over said claims. 28 U.S.C. § 1367.

10.     Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiffs' claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

11. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiffs. Any and all requests to investigate Plaintiffs' disputes sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Pacific Union/Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar manages Plaintiffs' mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background and Credit-Reporting Allegations for Plaintiffs' Pacific Union and Nationstar Mortgage Accounts

12.     Upon information and belief, in or around June 2015 Plaintiffs secured a mortgage for their property located at 653 Upland Court, Columbus, GA 31907.

13.     Sometime thereafter, Pacific Union Financial, LLC acquired Plaintiffs' mortgage loan and assigned loan number 8360000101xxxx, hereinafter ("Pacific Union mortgage account").

14.     On August 18, 2016, Plaintiffs jointly filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiffs' chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

15.     On December 27, 2016, Plaintiffs' Chapter 13 payment plan was confirmed. *See* Exhibit "A".

16.     Soon after, Pacific Union was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Nationstar.

17.     Plaintiffs' Pacific Union Mortgage was included with the above referenced sale, and thus, was transferred to Nationstar and assigned a loan number of 65426xxxx (hereinafter "Nationstar Mortgage" or "Nationstar Loan").

18.     On June 28, 2021, Plaintiffs were discharged form their chapter 13 bankruptcy, and excepted from discharge Plaintiffs' Pacific Union/Nationstar Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

19.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

20.     On July 29, 2021, Jonathan W. DeLoach, Trustee for Plaintiffs' Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiffs' Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "C".

21.     On or around August 31, 2021, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

22.     Throughout Plaintiffs' Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Pacific Union/

Nationstar mortgage account.

23.     After discharge, Plaintiffs continued to make timely mortgage payments to their Nationstar mortgage account until the loan was closed soon after in or around December 2021. A redacted copy of Plaintiff Carmelita Williams's three-bureau credit report and Plaintiff Barney Williams's three-bureau credit reports are each attached hereto as Exhibits "D" and "E" respectively.

24.     Sometime in January 2023, Plaintiffs obtained their three-bureau credit report and noticed that the Experian and Trans Union credit report(s) were not accurate. *See* Exhibits "D" and "E".

25.     Within the Experian credit report Plaintiffs noticed that it reported the Pacific Union mortgage account with a derogatory account rating, as being in a wage earner plan, and with bankruptcy references including that the account may have been discharged through bankruptcy. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [1]

26.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

27.     Within the Trans Union credit report Plaintiffs noticed that it reported the Pacific Union mortgage account with a derogatory account rating, as being in a wage earner plan, and with bankruptcy references. The reporting is incorrect because Plaintiffs complied with the terms of the chapter 13 bankruptcy plan, were successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiffs' chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [2]

28.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

29.     On or about February 2023, Plaintiffs sent direct disputes to Experian and Trans Union, and requested that the CRA Defendants investigate the reporting of the Pacific Union mortgage account. Plaintiffs requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiffs' credit reports concerning the Pacific Union mortgage account.

30.     Within these dispute letters, Plaintiffs described in great detail the issues and the misreporting following their respective bankruptcies and enclosed copies of either their bankruptcy docket report, trustee final report, and/or discharge order. A redacted copy of each unsigned dispute letter sent by Carmelita to Experian, Carmelita to Trans Union, Barney to Experian, and Barney to Trans Union are each attached hereto as Exhibits "F", "G", "H", and "I" respectively.

31.     Experian received Plaintiff Carmelita Williams's dispute on March 10, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff Carmelita Williams's Experian Dispute Letter is attached hereto as Exhibit "J".

32.     Upon information and belief, Experian did not respond to her dispute.

33.     She then obtained an updated copy of her three-bureau credit report on May 18, 2023 and within the Experian credit report noticed that the Pacific Union tradeline still reported a

derogatory account rating, as being in a wage earner plan, and with bankruptcy references including that the account may have been discharged through bankruptcy despite the bankruptcy being discharged while her Pacific Union mortgage was not. A redacted copy of Plaintiff Carmelita Williams's May 18, 2023 Three-bureau Credit Report is attached hereto as Exhibit "K".

34.     Experian received Plaintiff Barney Williams's dispute on March 13, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff Barney Williams's Experian Dispute Letter is attached hereto as Exhibit "L".

35.     Upon information and belief, Experian did not respond to his dispute.

36.     He then obtained an updated copy of his three-bureau credit report on May 18, 2023 and within the Experian credit report noticed that the Pacific Union tradeline now correctly reported as closed, current, and purchased by another lender. Experian fixed the issue for Barney. A redacted copy of Plaintiff Barney Williams's May 18, 2023 Three-bureau Credit Report is attached hereto as Exhibit "M".

37.     Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff Carmelita Williams's dispute and failed to remedy the inaccuracies within the Pacific Union tradeline and gave no explanation as to why it failed to sufficiently update Plaintiff Carmelita Williams's Pacific Union tradeline when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and were successfully discharged.

38.     Experian's responses were not the result of reasonable investigations into Plaintiff Carmelita Williams's dispute for they did not adequately evaluate or consider her information, claims, or evidence and failed to remedy the inaccuracies within the Pacific Union Mortgage

tradeline.

39.    Plaintiffs sent very clear disputes, and yet Experian made no changes to the disputed information, bankruptcy status, and/or account status.

40.    Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff Carmelita Williams's Pacific Union account.

41.    Upon the Plaintiffs' request to Experian for verification and addition regarding the Pacific Union mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff Carmelita Williams's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff Carmelita Williams with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Pacific Union Mortgage account.

42.    In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

43.    In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

44.    Trans Union responded to Plaintiff Barney Williams on March 16, 2023 and concerning the Pacific Union tradeline stated, "In response to your dispute, this item was DELETED from your credit report." A redacted copy of Trans Union's Response to Plaintiff Barney Williams is attached hereto as Exhibit "N".

45.    Trans Union responded to Plaintiff Carmelita Williams on March 23, 2023 and concerning the Pacific Union tradeline stated, "In response to your dispute, this item was DELETED from your credit report." A redacted copy of Trans Union's Response to Plaintiff Carmelita Williams is attached hereto as Exhibit "O".

46.    Plaintiffs then obtained an updated copy of their three-bureau credit report on May 18, 2023 and within the Trans Union credit report noticed that the reporting of the Pacific Union tradeline confirmed the response. The tradeline was now missing from her Trans Union credit report despite being discharged from chapter 13 bankruptcy. *See* Exhibits "K" and "M".

47.    Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiffs' disputes and failed to remedy the inaccuracies within the Pacific Union tradelines and gave no explanation as to why it failed to sufficiently update the Pacific Union tradelines when Plaintiffs filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, and were successfully discharged.

48.    Plaintiffs sent very clear disputes, and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

49.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiffs' Pacific Union account.

50.    Upon the Plaintiffs' request to Trans Union for verification and addition regarding the Pacific Union mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiffs' information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiffs with a response communicating the results.

Further, Trans Union did not make any attempt to substantially or reasonably verify the Pacific Union Mortgage account.

51.     In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

52.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

## Background and Credit-Reporting Allegations for Plaintiff Carmelita Williams's Lending Club and Avant Accounts

53.     Plaintiff Carmelita Williams had opened a credit card account with Lending Club Corporation ("Lending Club") under the account number 5600xxxx, hereinafter ("Lending Club Account") as well as a credit card account with Avant LLC ("Avant") under account number 2728xxxx ("Avant Account").

54.     On August 18, 2016, Plaintiff Carmelita Williams filed for a Chapter 13 bankruptcy and listed these accounts as non-priority unsecured debts. *See* Exhibit "A".

55.     On December 27, 2016, Plaintiff Carmelita Williams's Chapter 13 payment plan was confirmed. *See* Exhibit "A".

56.     On June 28, 2021, Plaintiff Carmelita Williams received a discharge from bankruptcy and Lending Club and Avant are listed in the notice to creditors as well as the Trustee's Final Report and Account *See* Exhibits "B" and "C" respectively.

57.     In January 2023, Plaintiff Carmelita Williams obtained her three-bureau credit report

and noticed that the Trans Union credit report was not accurate. *See* Exhibit "D".

58.    Within the Trans Union credit report, Plaintiff Carmelita Williams noticed that it reported the Lending Club and Avant accounts as being open accounts. This reporting was incorrect because Plaintiff Carmelita Williams's Lending Club and Avant credit accounts were listed in the petition, were discharged in Chapter 13 bankruptcy, and Lending Club and Avant were each notified of the discharge. Lending Club and Avant were each required to include remarks that the loans were discharged, and could not report that it either were open because it made it appear that the debtor was liable on these discharged debts.

59.    On or about February 2023, Plaintiff Carmelita Williams sent a direct dispute to Trans Union and requested that the CRA Defendants investigate the reporting of the Lending Club and Avant accounts. She requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on her credit report concerning the Lending Club and Avant accounts.

60.    Within the dispute letter, she described in great detail the issues and the misreporting following her bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. *See* Exhibit "F".

61.    Trans Union responded to Plaintiff Carmelita Williams on March 23, 2023, and concerning the Lending Club and Avant accounts stated, "In response to your dispute, this item was DELETED from your credit report." *See* Exhibit "O".

62.    She then obtained an updated copy of her three-bureau credit report on May 18, 2023 and within the Trans Union credit report noticed that the reporting of the Lending Club and Avant tradelines confirmed the response. The tradelines were now missing from her Trans Union credit

report despite being discharged from chapter 13 bankruptcy. *See* Exhibit "K".

63.     Trans Union's response was not the result of a reasonable investigation into Plaintiff Carmelita Williams's dispute and failed to remedy the inaccuracies within the Lending Club and Avant tradelines because she demonstrated these loans were discharged in bankruptcy.

64.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted her Lending Club and Avant accounts.

65.     Upon the Plaintiff Carmelita Williams's request to Trans Union for verification and addition regarding the Lending Club and Avant accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of her information, claims or evidence and did not make any attempt to substantially or reasonably verify the Lending Club and/or Avant tradelines.

66.     In the alternative, Trans Union failed to contact Lending Club and Avant, therefore, failed to perform any investigation at all.

67.     In the alternative to the allegation that Trans Union failed to contact Lending Club and Avant, it is alleged that Trans Union did forward some notice of the dispute to Lending Club and Avant, and Lending Club and Avant both failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

## COUNT I – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

68.     The Plaintiff Carmelita Williams realleges and incorporate all paragraphs above as if fully set out herein.

69.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff Carmelita Williams.

70.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

71.     Plaintiff Carmelita Williams furnished Experian the necessary documentation supporting her tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff Carmelita Williams.

72.     Despite actual and implied knowledge that Plaintiff Carmelita Williams's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff Carmelita Williams, and ultimately her creditworthiness.

73.     After Experian knew or should have known her account status in relation to her bankruptcy was inaccurate, they failed to make the corrections.

74.     As a result of Experian's conduct, action, and inaction, the Plaintiff Carmelita Williams suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

75.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff

Carmelita Williams for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling Plaintiff Carmelita Williams to recover under 15 U.S.C. § 1681o.

76.     Plaintiff Carmelita Williams is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.


**COUNT II – EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**


77.     The Plaintiff Carmelita Williams realleges and incorporates all paragraphs above as if fully set out herein.

78.     Experian violated § 1681i by failing to update inaccurate information in her credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in her credit files, and relying upon verification from a source it has reason to know is unreliable.

79.     As a result of Experian's conduct, action, and inaction, Plaintiff Carmelita Williams suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

80.     Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling

the Plaintiff Carmelita Williams to recover actual damages under 15 U.S.C. § 1681o.

81.    Plaintiff Carmelita Williams is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

82.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

83.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiffs.

84.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

85.    Plaintiffs furnished Trans Union the necessary documentation supporting Plaintiffs' tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiffs.

86.    Despite actual and implied knowledge that Plaintiffs' credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiffs, and ultimately Plaintiff's' creditworthiness.

87.    After Trans Union knew or should have known Plaintiffs' account statuses in relation to their bankruptcy were inaccurate, they failed to make the corrections. Further, Plaintiffs did not request for the tradelines be deleted.

88.     As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

89.     Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiffs for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiffs to recover under 15 U.S.C. § 1681o.

90.     The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

91.     The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

92.     Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiffs' credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiffs' credit files, and relying upon verification from a source it has reason to know is unreliable.

93.     As a result of Trans Union's conduct, action, and inaction, the Plaintiffs suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

94.     Trans Union's conduct, action, and inaction, were willful, rendering it liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

95.    The Plaintiffs are entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

96.    The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

97.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiffs' dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

98.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Pacific Union/Nationstar representation within Plaintiffs' credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiffs' dispute(s) of the Pacific Union /Nationstar representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Pacific Union /Nationstar representations to the consumer reporting agencies.

99.    As a result of Nationstar's conduct, action, and inaction, the Plaintiffs suffered

damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

100.  Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiffs to recover actual damages under 15 U.S.C. § 1681o.

## COUNT VI – LENDING CLUB'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

101.  The Plaintiff Carmelita Williams realleges and incorporates all paragraphs above as if fully set out herein.

102.  Defendant Lending Club violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff Carmelita Williams's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of the investigations, and/or failing to appropriately modify the information.

103.  Lending Club further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiffs' dispute(s) of the Lending Club representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Lending Club representations to the consumer reporting agencies.

104.     As a result of Lending Club's conduct, action, and inaction, the Plaintiff Carmelita Williams suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105.     Lending Club's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff Carmelita Williams to recover actual damages under 15 U.S.C. § 1681o.

**COUNT VII – AVANT'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

106.     The Plaintiff Carmelita Williams realleges and incorporates all paragraphs above as if fully set out herein.

107.     Defendant Avant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff Carmelita Williams's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

108.     Avant further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the dispute(s) of the Avant representation, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Avant representations to the consumer reporting agencies.

109.    As a result of Avant's conduct, action, and inaction, the Plaintiff Carmelita Williams suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

110.    Avant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff Carmelita Williams to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

111.    Plaintiffs will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

112.    Plaintiffs respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

113.    Plaintiffs respectfully request that this Honorable Court award Plaintiffs their

litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

114.   The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiffs.

115.   Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiffs and have been a substantial factor in causing credit denials and other damages.

116.   Plaintiffs suffered a variety of damages, including economic and non-economic damages as prayed for herein.

117.   Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiffs.

118.   Defendants are liable unto Plaintiffs for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiffs, Carmelita and Barney Williams, pray that this Honorable Court:

A.   Enter Judgment in favor of Plaintiffs and against Defendants Experian Information

Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC, Lending Club Corporation, and Avant LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiffs, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.     Find that the appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C.     Award Plaintiffs pre-judgment and post-judgment interest, as allowed by law;

D.     Order that the CRA Defendants, Experian Information Solutions, Inc. and Trans Union LLC, and Furnisher Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC, Lending Club Corporation, and Avant LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiffs and/or any of Plaintiffs' personal identifiers.

E.     Grant such other and further relief, in law or equity, to which Plaintiffs might show they are justly entitled.


Date Filed: <u>June 30, 2023</u>


Respectfully submitted,

Page 25 of 27

/s/ Matthew P. Forsberg
Matthew P. Forsberg
TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

/s/ Jonathan A. Heeps
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com

COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

June 30, 2023                                /s/ Matthew P. Forsberg
Date                                        Matthew P. Forsberg